## AFFIDAVIT

I, Special Agent Brian Morris, being first duly sworn, do hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  Your affiant is currently employed with the U.S. Homeland Security Investigations (HSI) and have been so for over nine years. Prior to 2012, your affiant worked as a U.S. Secret Service Special Agent, Winfield Police Officer, and West Virginia State Trooper dating back to 1998. Your affiant is currently assigned to Charleston, WV where your affiant is charged with investigating all major federal crimes including, but not limited to, human trafficking/smuggling, child pornography, sex tourism, and various white-collar crimes. Your affiant was the co-chairman of the law enforcement subcommittee on the West Virginia Human Trafficking Task Force until 2018, which is when your affiant was reassigned to a state/local task force to work on cases involving narcotics.

2.  Your affiant makes this affidavit in support of an application for a criminal complaint against Kristen NAYLOR-LEGG, charging her with a violation of 18 U.S.C. § 1591(a)(1) (sex trafficking of a minor).

3.  The facts in this affidavit come from my personal observations, my training, experience, information obtained from the female victim, collected DNA samples, and other officers.

4.  Since this affidavit is being submitted for the limited purpose of securing an arrest warrant, your affiant has not included every fact known to me concerning this investigation. Your affiant has set forth only the facts necessary to establish probable cause that evidence and instrumentalities of a violation of Title 18, United States Code, Section 1591 (a) (1).

1

## STATUTORY AUTHORITY

5. This investigation concerns alleged violations of Title 18, United States Code, Sections 1591 (a) (1) – Sex trafficking of children.

   a. Title 18 U.S.C. § 1591 (a) (1) Whoever knowingly –

   (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person, knowing, or . . . in reckless disregard of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act shall be punished as provided in subsection (b).

## PROBABLE CAUSE

6. On or about September 29, 2020, your affiant was contacted by an HSI Task Force Officer (TFO) regarding a Fayette County Sheriff's Office (FCSO) investigation stemming from an allegation made by a female victim that was allegedly trafficked by Larry Clay Jr. and Kristen NAYLOR-LEGG.

7. The victim had stated to law enforcement that Clay, who at the time was an FCSO employee and working as the Chief of Police in Gauley Bridge, rendered payment to Kristen NAYLOR-LEGG, a relative of the female victim, to have sexual intercourse with the victim. The sexual encounters between Clay and the victim began when she was 17 years old.

8. On September 30, 2020, your affiant interviewed the female victim about the allegations. The female victim stated that on two different occasions in June 2020, and while she was 17 years old, NAYLOR-LEGG, a relative of hers, accompanied her to meet Clay so that he could have sexual intercourse with her. The female victim reported that one incident took place in/near Cain Branch, Fayette County, WV (located just outside Gauley Bridge city limits). She stated that the second incident took place in/near Gauley Bridge, Fayette County, WV (inside the Gauley Bridge Police Department within the old Gauley Bridge High School). According to the

victim, Clay rendered $50.00 per incident to NAYLOR-LEGG. Due to the female victim becoming emotional, your affiant ended the interview and explained to her that a HSI Forensic Interviewer could further discuss what took place between her and Clay at a later date.

9. On October 6, 2020, the HSI Forensic Interviewer interviewed the female victim for approximately two hours. During the interview, the female victim again disclosed that Clay had sexual intercourse with her on two different occasions in June 2020 while she was 17 years old. The female victim said Clay was aware of her age, in part because the female victim knew that NAYLOR-LEGG and Clay had discussed her upcoming 18th birthday.

10. The female victim indicated that NAYLOR-LEGG would use cell phones to take pictures of the victim's breasts and buttocks and also directed the victim to take pictures of her own (the victim's) breasts and buttocks. She stated that NAYLOR-LEGG would send these pictures to Clay and other individuals. Some of these individuals would pay NAYLOR-LEGG for the photographs via the cell phone application Cash App.

11. The female victim stated that on the first occasion that Clay had sexual intercourse with her, Clay came to NAYLOR-LEGG's house and told NAYLOR-LEGG to meet him in approximately 10 minutes. NAYLOR-LEGG then texted the female victim to tell her to come downstairs in order to leave, and then NAYLOR-LEGG drove the female victim to Cain Branch. The minor female said NAYLOR-LEGG drove her to the location in a brown Hyundai Tucson.[1] The victim stated that Clay arrived at the location in a grey police vehicle.[2] She stated that Clay was in his police uniform during the entire encounter, unzipping his pants in order to expose his penis. Clay directed the female victim to perform oral sex upon him. Clay then bent the female victim over the edge of his vehicle and

---

[1] Based upon information and belief, your affiant understands that Hyundai vehicles are not manufactured in completed form in the state of West Virginia.
[2] The Gauley Bridge Police Department conveyed to your affiant that Clay was issued a grey Ford Crown Victoria. The Gauley Bridge Police Department also has other Ford vehicles that can be issued to its officers. Based upon information and belief, your affiant understands that Ford vehicles are not manufactured in completed form in the state of West Virginia.

had sexual intercourse with her. She stated that he then ejaculated on the ground. After the sexual activity was completed, the victim stated that Clay provided cash to NAYLOR-LEGG and left.

12. During the October 6, 2020, interview, the female victim stated that on the second occasion that Clay had sexual intercourse with her, which took place in the old Gauley Bridge High School, Clay ejaculated in her vagina after she advised him not to do it. The female victim stated that NAYLOR-LEGG said that she needed to let him ejaculate inside of her and that it would not be a problem because he was "fixed." The female victim stated that NAYLOR-LEGG provided her some towels to clean herself afterwards. The female victim stated that she threw the towels in the corner once she cleaned herself off. The female victim identified the specific room in the old high school where the sexual activity took place and where she left the towels. According to the victim, NAYLOR-LEGG accompanied the victim and was present during both sexual encounters between Clay and the victim.

13. After learning that the towels were thrown over in the corner of the specified room, your affiant contacted Gauley Bridge Town Hall and requested that the town secure the area in the high school where the female victim stated the incident took place. There was limited access to the room in question; Clay was one of the limited group of individuals with access. Your affiant and a TFO traveled to Gauley Bridge and met with Gauley Bridge Mayor Robert Scott. Your affiant obtained written consent from Mayor Scott to enter the old Gauley Bridge High School (which is now a community center owned by the city of Gauley Bridge) and search for evidence of the crime. Your affiant and the TFO traveled to the school with the Mayor and the Acting Police Chief for Gauley Bridge and were granted access to the building. During the search, the government seized five cotton products (towels and paper towels) from the room described by the female victim that appeared to be stained with an unknown substance. Your affiant maintained the evidence and secured it in the HSI evidence vault in Charleston, WV, until a forensic examination was

conducted.

14.     On or about February 4, 2021, your affiant reviewed the completed West Virginia State Police Forensic Laboratory Report and learned that there was a mixture of DNA from two contributors on an area of a washcloth.[3] The examination could not exclude the victim and Clay as contributing to the DNA mixture. According to the report, based upon an analysis using 21 of 21 loci, the probabilities of selecting an unrelated individual at random who cannot be excluded as a potential contributor to the DNA profile obtained from the item listed above are approximately:

    1 in 3.49 trillion CPI[4]; >99.9% CPE[5] in the Caucasian population

    1 in 61.2 trillion CPI; >99.9% CPE in the African American population

    1 in 5.76 trillion CPI; >99.9% CPE in the Hispanic population.

## CONCLUSION

15.     Based on the above information, your affiant submits that there is probable cause to believe that in June 2020, Kristen NAYLOR-LEGG, committed the offense of sex trafficking of a minor, in violation of 18 USC 1591 (a) (1), in that NAYLOR-LEGG, knowing that the female victim was under the age of 18, recruited, transported, provided, obtained, the minor victim knowing that the minor victim would be caused to engage in a commercial sex act. The offense was in and affecting interstate commerce as the offense was coordinated in part via cell phone, which is a means and facility of interstate commerce; the victim was transported to engage in the sexual activity in a vehicle

---

[3] Additional DNA profiles from unknown individuals were also located on some of the items seized and submitted for analysis. The presence of these other profiles did not change the conclusion that CLAY and the victim could not be excluded from contributing to the mixture.

[4] According to the lab report glossary, CPI is "combined probability of inclusion," which refers to "the proportion of a given population that could be expected to be included as a potential contributor to a DNA mixture."

[5] According to the lab report glossary, CPE is "combined probability of exclusion," which refers to "the percentage of the population that can be excluded as a potential contributor to a DNA mixture."

manufactured outside the state of West Virginia, which vehicle was also a means and facility of interstate commerce; and one of the commercial sexual acts took place on a vehicle that had been manufactured outside the state of West Virginia.

Respectfully submitted,

SA Brian Morris
Special Agent Brian Morris
U.S. Homeland Security Investigations (HSI)

Subscribed and sworn to by telephonic means this 24th day of March, 2021.

DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA